IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1907.

---

JOHN E. LANNING, RECEIVER, v. SAMUEL JOHNSON
ET AL.

Submitted July 5, 1907—Decided April 21, 1908.

Knowledge of illegality or want of consideration of a promissory note
by the president of a bank, who discounts it without authority to
do so having been conferred upon him by his board of directors, is
not imputable to the bank when the president's act has not been
ratified by, or acquiesced in by, the board.

---

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justice REED.

For the rule, *Edmund Wilson.*

*Contra, John S. Applegate & Son.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff sued as the re-
ceiver of the Monmouth Trust and Safe Deposit Company to

recover the amount due upon a certain promissory note for $10,000 held by the insolvent company and signed by the defendant. The case was tried before the court without a jury, by consent of parties, and the proofs disclosed the following facts: That the note was made at the instance of one Twining, who was a co-director, with the makers of the note, of the First National Bank of Asbury Park, and also president and a director of the trust company; that Twining obtained the signatures of the defendants to the note upon the pretence that the bank was temporarily in need of funds to carry it over until it received returns from its discounts in other banks, and upon the express condition and agreement with the defendants that the note was not to be discounted or used unless and until the signatures of the other directors of the bank, some five in number, were procured and attached to the note; that Twining, notwithstanding his agreement with the defendants, caused the note to be discounted by the trust company without the additional signatures of the remaining directors being first obtained; that the discounting was done by Twining, as president of the company, without consultation with his board of directors, and that the right to do so had not been conferred upon him by the board, either expressly or by knowingly permitting him to exercise a like power on previous occasions, or by ratifying or acquiescing in its exercise by him. On these facts the trial court found in favor of the plaintiff.

It is now contended on behalf of the defendants that the conduct of Twining in procuring the note to be discounted without first obtaining the signatures of the other directors of the bank was a fraud upon the defendants; that the knowledge of Twining of the fact that the note was fraudulently being put into circulation was attributable to the trust company because of the fact that he acted for it in the matter of the discount, and that therefore the makers of the note are not liable to the receiver.

That the fraud of Twining in presenting the note for discount without procuring the signatures of all the directors of the bank renders it void, if the trust company took it with

notice of the fraud, is conceded. The only question is whether his knowledge is attributable to the trust company.

It has frequently been declared in other jurisdictions that there is a distinction between knowledge of illegality, or want of consideration of a note, by a director who acts with his board in discounting it, and such knowledge on the part of a director who is not present and acting with the board when the discount is made, and that in the former case the bank is bound by his knowledge, and in the latter case it is not. Many of the cases so holding will be found collected in the opinion of Justice Depue, in *First National Bank of Hightstown* v. *Christopher,* 11 *Vroom* 435. It is upon the principle which is considered to underlie this distinction that the defendants rest their claim of non-liability. But the distinction claimed to exist has been condemned, as we understand the opinions hereafter referred to, by our Court of Errors and Appeals. In the case of *Sooy* v. *State,* 12 *Id.* 394, the sureties upon the bond of a state treasurer sought to escape liability for his defalcations upon the ground that the legislature had knowledge, at the time of the execution and delivery of the bond, that the treasurer was then a defaulter, and that it had failed to communicate this fact to the sureties. Such knowledge on the part of the legislature was attempted to be shown by proving that the fact had been communicated to one of the members of that body. It was decided that "in a matter wherein the legislature properly acts as an agent of the state, notice to members of the legislature individually is not notice to the state. Such notice, to bind the state, must be given to one of the legislative branches in organized session." The underlying rule upon which this decision was rested is stated in the opinion to be that the knowledge of the agent is chargeable upon the principal only when the principal, if acting for himself, would have received notice of the matters known to the agent. In the late case of *Vulcan Delinning Co.* v. *American Can Co.,* 67 *Atl. Rep.* 339, the same court affirmed the rule laid down in Sooy *v.* State, and held that the defendant company was chargeable with knowledge of facts acquired by its president while a director of the complainant company

only so far as it would itself have acquired such knowledge by dealing directly or through another agent with the complainant company concerning the subject-matter of the controversy. At the same time it expressly repudiated the doctrine laid down by us in the earlier case of *Willard* v. *Denise,* 5 *Dick. Ch. Rep.* 482, viz., that where information is casually obtained by an agent of a corporation, and the corporation afterward acts through such agent in a matter where the information possessed by him is pertinent, the knowledge of the agent will be imputed to the principal. On the strength of those two cases, therefore, it would seem that if the note in controversy had been discounted by the board of directors of the trust company while Twining was present as a member thereof the trust company would not be chargeable with notice of his fraudulent conduct in procuring its discount. But the fact that the note was discounted, not by the board of directors, but by Twining himself, he taking advantage of his position as president to usurp the function of the board without authority from them, makes it unnecessary to determine the question discussed, for it can hardly be held that where a transaction takes place without either the knowledge or authority of the board the board is chargeable with notice of facts known to their self-constituted agent, but not communicated by him to them.

The rule to show cause will be discharged.